Johnson, C. J. The question involved relates to the sufficiency of the plaintiffs’ plea. The argument is that the governor being the mere naked trustee of the State, the moneys, though sued for in his name, are in reality due to the State in her own right. We deem it wholly immaterial for the purposes of this case, whether the governor is the real or nominal plaintiff Under either state of the case the plea interposed by the plaintiffs could not avail them as a legal defence to the action. We will concede for the sake of the argument that the State is the party really and beneficially interested in the subject matter of this suit, and then see how the defence set up accords with the law. Upon the assumption that the State is the party really interested in this suit, which is the strongest grounds that could be taken for the plaintiffs, we conceive that the whole question is conclusively settled by the decision of this court in the case of William E. Woodruff, Ex parte, pronounced at the last July Term. That was an application for a mandamus by Woodruff to compel the Attorney General to receive the notes of the State Bank in payment of a debt due the State. The debt demanded in that case accrued after"the passage of the State Bank charter, and before its repeal by the act of 1845. It was insisted that the liability having accrued after the passage of the charter and before its repeal, it could be discharged in the bills and notes of that institution, and that the act of 1845 is a law impairing the obligation of contracts and consequently void, (a) This court, in that case, said: “It is objected that the act of 1845 is a law impairing the obligation of contracts, and that, therefore, it is repugnant to the constitution of the United States and void. This brings us to the only question really involved, and that is whether the act of 1845 so operated as to impair any obligation imposed by the contract in this case. It will be conceded that the entire debt accrued prior to the passage of the repealing act, and that the petitioner had an undoubted right to discharge it at any time before the repeal in bills or notes of the State Bank, we think, cannot, for a moment, admit of a doubt. But did the act of 183G so incorporate itself into the contract as to become a part of the contract, and to fix and vest a right in the petitioner to discharge it in the kind of funds specified in that act? If such was the legal effect and operation of it, then it is clear that the doctrine contended for is not only sound in principle, but that it is conclusive upon the question, and the necessary result is that the legislature possessed no power to divest that right by a repeal of the act. We think that a single observation, touching the consequences which might very naturally flow from this mode of reasoning, will be fully sufficient to expose its uttter fallacy. The act by which the State Bank was created was nothing more than a grant of power for certain purposes therein specified, which was exclusively under the control of the legislature, and consequently subject to be repealed at any time whenever in the wisdom of that body it should seem expedient for the good of the country. Suppose that, instead of merely modifying the charter and placing the bank in liquidation, they had conceived a total repeal better calculated to sub-serve the interests of the community. Upon the passage of the act abolishing the charter, that moment would the entire circulation of that institution have become wholly valueless, and, as a necessary consequence, it would in effect have operated as an extinguishment of the debt. The act relied upon by which the debtors of the State were permitted to make payment of the bills or notes of the State Bank was a mere gratuity, and, of course, liable to be revoked and withdrawn at any time when it should suit the purposes of the power that conferred it. If this position be correct, then it clearly results that the privilege of paying debts due the State in bills and notes of the bank was only conferred upon the implied condition that such debt should be paid before the repeal of the law, but, if delayed till after that event, in the absence of any saving in the repealing act, they could be discharged alone in the constitutional currency of the country.” This, we believe, to be the sound and legitimate construction of the statutes, and as such fully approve and adopt it in this case. If the State would not be legally bound to receive the bills of the bank in case she is the party really and legitimately interested in this suit, for a much stronger reason would she not be if she is not entitled to the moneys in her own right. Under this view of the law, we do not conceive it necessary, or even important, to determine the attitude of the governor in relation to the subject matter of the suit, as in no aspect of the case could the defence set up by the plaintiffs be admitted. (®) Note. The 2Bth section of the hank charter provided that the bills and notes of the bank should be received in payment of all debts due the State. The act of 10th January, 1843, repealed that section of the charter. — Reporter. Note. The ease of Trigg et al. vs. Drew, as Governor, §c., was similar to this, and was tShrmed under the decision in this case. Both cases have be.en taken to the Supreme Court of the United States by writs of error, and are now pending there. — Reporter. We are, therefore, clearly of opinion that there is no error in the judgment of the circuit court in sustaining the demurrer, and that the same ought to be affirmed. The judgment of the circuit court is in all things affirmed.